ORIGINAL

FILED
SUPERIOR COURT
OF GUAM

2019 JAN 28 PM 2: 12

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO.: CF0329-17 |
| vs. | |
| TAMARA ANDREA MUNA *et al*, DOB: 05/14/1978 | DECISION AND ORDER (Defendants' Motion to Suppress) |
| DEFENDANTS. | |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola upon Tamara Andrea Muna and Roke Leonard Trinidad Flores' ("Defendants") Motion to Suppress. Assistant Attorney General Matthew A. Phelps appeared for the People of Guam ("People"). Attorney David J. Lujan appeared on behalf of the Defendants. Upon review of the written and oral arguments, and legal authorities presented by the Parties, the Court issues this Decision and Order **DENYING** Defendants' Motion.

## BACKGROUND

a. First Search Warrant.

On or about May 15, 2017, an individual reported an alleged theft of firearms and other property from his home at 220 Lodo Lane, Chalan Pago, Guam. Def's Mem. Supp. Mot. Suppress 2 (Sept. 5, 2017). The individual suspected his nephew Derek James Santos of the theft. Id. On May 16, 2018, Guam Police Department ("GPD") Officer Eric Felix N. Asanoma ("Officer

Asanoma") applied for a warrant to search the residence Santos was believed to be residing at, identified as 176C Lodo Lane, Chalan Pago Guam. People's Opp'n Def's Mot. Suppress Ex. 1 at 1-5 (Sept. 21, 2017). Officer Asanoma included an affidavit in support of the application. The affidavit first identified Officer Asanoma and his background as a police officer. Id. Officer Asanoma next stated that he was tasked with investigating the burglary complaint at 220 Lodo Lane in Chalan Pago, Guam. Id. Officer Asanoma recounted GPD's initial investigation of the burglary and the process that led to identifying Santos as the suspect. Id. The Judge granted the application for the warrant ("First Search Warrant") and authorized the search on May 16, 2018 at 12:20 a.m. Id. Ex. 2 at 1-3.

    b. Second Search Warrant.

Later that same day, Officer Asanoma appeared before the Judge a second time, requesting to search a house identified as 731 Santa Cruz Drive in Chalan Pago. People's Opp'n, Ex. 3 at 1-7 (Sept. 21, 2017). The second warrant affidavit recited what was stated in the first warrant affidavit in support of the application to search 176C Lodo Lane. Id. However, the second warrant application also stated that the Mandana Drug Task Force and other assisting agencies executed the search at 176C Lodo lane earlier that day. Id.[1] Officer Asanoma indicated that officers recovered two (2) rifles during the earlier search and positively identified one as a rifle stolen from 220 Lodo Lane. Id. Officer Asanoma also summarized information gained during an interview with Santos, who stated he called his cousin, Defendant Roke Leonard Trinidad Flores ("Flores") to help him sell the firearms. Id. Santos indicated that Flores took nine (9) of the eleven (11) stolen firearms and placed them in a dark colored Honda Element. Id. Santos also told police that he believed Flores still had the firearms because Flores had not given Santos any money for the sale of the firearms. Id. Police then learned the address of Flores's home, which he shares with Defendant Tamara Andrea Muna ("Muna") and their two children. Id. Officers conducted further investigation and learned that Defendant Flores did not possess a valid Guam firearms identification card. Id. Officers also confirmed Defendant Flores resided at 731 Santa Cruz Drive in Chalan Pago. Id. Officers conducted a residence check and noted that a dark colored Honda Element matching the vehicle Santos described was parked in front of the residence. Id. Based on this information, a Judge authorized the Warrant ("Second Search Warrant") to search 731 Santa Cruz Drive and the Honda Element on May 16, 2018 at 4:59 p.m. The Search Warrant authorized

---

[1] The warrant application also notes the corrected address to read 186 Lodo Lane.

the officers to search for the nine (9) firearms, ammunition, cell phones, jewelry and electronics. Id. Ex. 4 at 1-3.

c. Third Search Warrant.

A little over three (3) hours later, officers again appeared before the Judge requesting an additional warrant authorizing a secondary search of 731 Santa Cruz Drive and a 2005 Black Nissan Altima registered to Flores. The affidavit in support of the warrant application recounted the allegations put forth in the earlier Search Warrants. Opp'n, Ex. 5 at 1-7 (Sept. 21, 2017). Officer Asanoma's affidavit indicated that the officers executed the search as authorized earlier that day by the warrant signed at 4:59 p.m. Id. During the search, officers discovered suspected methamphetamine, scales and other drug paraphernalia in the residence. Id. Officer Asanoma indicated that the substances were subjected to a field test which indicated a presumptive positive reaction for the presence of amphetamines. Id. Officer Asanoma identified a second vehicle at the residence, a 2005 Black Nissan Altima, which investigators discovered was also registered to Defendant Flores. The warrant application sought authorization to search the Altima for drugs and firearms. Id. The Judge authorized the search of the Altima and 731 Santa Cruz Drive for firearms, jewelry, electronics and drugs, paraphernalia, packaging materials, scales and drug ledgers ("Third Search Warrant"). Id. Ex. 6 at 1-3.

d. Criminal Case.

Subsequently, on June 28, 2017, a Superior Court of Guam Grand Jury returned an Indictment charging Defendant Muna with **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE WITH INTENT TO DELIVER (As a First Degree Felony)** and **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a Third Degree Felony)**. The Indictment also charged Defendant Flores with four counts of **POSSESSION OF A FIREARM WITHOUT A GUAM FIREARMS IDENTIFICATION CARD (As a Third Degree Felony),** four counts of **POSSESSION OF AN UNREGISTERED FIREARM (As a Third Degree Felony)** and **THEFT BY RECEIVING (As a Third Degree Felony)**.

On September 5, 2017, the Defendants filed a joint Motion to Suppress in this matter. The Motion to Suppress only challenges the Second and Third Warrants authorizing the searches of the residence and automobiles of Defendants Muna and Flores. The People filed an Opposition on September 21, 2017. The Defendant filed a Reply on September 29, 2017. This Court inherited the

Adult Drug Court docket in January 2018. The Court granted the Defendants' numerous requests for continuances due to scheduling issues.

On October 1, 2018, the Court held an initial hearing on the Motion to Suppress. The People requested the Court deal with a threshold issue related to the Defendants' argument under Franks v. Delaware, 438 U.S. 154 (1978), before allowing testimony. On October 11, 2018, the Court issued a Decision and Order denying the Defendants' request for a Franks hearing, finding Defendants had failed to make a substantial preliminary showing that false or misleading statements were included in, or that omissions were made from, the affidavits in support of applications for search warrants related to this matter. On November 5, 2018, a hearing was held for the parties to argue the Motion to Suppress. The Court now issues this Decision and Order addressing the remaining issues presented in the Defendants' Motion.

## DISCUSSION

The Defendants argue the warrants that authorized the searches of 731 Santa Cruz Drive, the Honda Element, and the Nissan Altima are not supported by probable cause, did not establish a nexus to the home or the Nissan, and were overbroad. Mot. Suppress 5 (Sept. 5, 2017).

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. The Amendment's protections are extended to Guam via the Organic Act of Guam. See 48 U.S.C.A. § 1421b (West 2017). Every search and seizure of a person, or their house, papers, and effects, must be reasonable to be constitutionally permissible. See People v. Chargualaf, 2001 Guam 1 ¶ 14. A seizure that is not authorized by a duly issued warrant is presumed unreasonable. People v. Chargualaf, 2001 Guam 1 ¶ 14 (citing Pennsylvania v. Strickler, 757 A.2d 884, 888 (Pa. 2000)).

For a judge to issue a search warrant, it must be supported by probable cause. This means that "given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The probable-cause standard is "a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Maryland v. Pringle, 540 U.S. 366, 370 (2003). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Finally, "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,"

and "the belief of guilt must be particularized with respect to the person to be searched or seized." Pringle, 540 U.S. at 371.

When a judge in the Superior Court of Guam reviews a probable cause determination by another judge in the Superior Court, the reviewing judge "should ensure that the issuing judge had a substantial basis for concluding that probable cause existed." People v. Gallo, 2017 Guam 24 ¶ 25. "A reviewing court may not suppress evidence based upon a lack of probable cause unless the issuing court's probable cause determination was clearly erroneous." Id. "A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake." People v. Mansapit, 2016 Guam 30 ¶ 8 (quoting People v. Camacho, 2004 Guam 6 ¶ 13). Also, "[i]n reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." U.S. v. Stanert, 762 F.2d 775, 778 (9th Cir. 1985). This means that items later found during the search are irrelevant in determining whether a warrant was valid. Discovery of incriminating evidence does not justify an improper warrant, and conversely, finding nothing during a search does not invalidate a proper warrant. Lastly, in a motion to suppress evidence, "the defendant bears the burden of proof when a search or seizure is conducted pursuant to a warrant." People v. Calhoun, 2014 Guam 26 ¶ 9 (quoting People v. Santos, 1999 Guam 1 ¶ 51).

### 1. Probable cause existed for the Second Search Warrant based on information provided by Derek James Santos.

Defendants first argue the Second Search Warrant relied entirely on information provided by Santos to establish probable cause, and that Santos is an unreliable informant. Mot. Suppress 8 (Sept. 5, 2017). Defendants argue that Santos is unreliable because he confessed after being caught with stolen items, changed his story, and was a drug user. Id.

Upon being found with two of the stolen firearms, Santos initially told police that he had stolen the firearms from his uncle and sold the other firearms to an unknown person at the Chalan Pago baseball field. Opp'n 2 (Sept. 21, 2017). After being transported to a police office in Tiyan, Santos changed his story and stated he had sold the firearms to Roke Flores. Id. When officers asked Santos why he had changed his story, Santos responded that he fabricated his initial story because he did not want to implicate Flores. Id. 3.

The officers were able to corroborate several aspects of Santos's story before seeking the Second Search Warrant. The officers were able to confirm through observation and DMV records that Flores lived in the home identified by Santos as Flores's residence and that Flores owned a dark colored Honda Element. Id. 6-7. The police were also able to use serial numbers to corroborate that one of the firearms discovered at Santos's residence was reportedly stolen. Opp'n, Ex. 3 (Sept. 21, 2017). The Court notes that this corroboration does not directly implicate Defendants Muna or Flores in criminal activity, but it does suggest that Santos's story was not completely fabricated. This corroboration would likely not be enough to establish probable cause on its own, but is a relevant factor in determining probable cause from a totality of the circumstances approach.

During the execution of the Second Search Warrant, the officers discovered two of the firearms described by Santos as stolen, and were able to further corroborate Santos's story. While inapplicable to the Second Warrant, the discovery of the stolen firearms in the Flores residence provided additional probable cause for the Third Search Warrant.

Next, the Court notes that Santos named Flores during an interview in which Santos admitted to committing a crime himself. "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." U.S. v. Harris, 403 U.S. 573, 583 (1971).

Finally, while Santos did not have a history of reliability, he was a "known" informant (as opposed to an anonymous tipster) because the police knew his identity at the time he provided information. U.S. v. Quitugua, No. 16–00004, 2016 WL 3620727, at *3 (D. Guam June 29, 2016). A statement from a known informant is more credible than a statement from an anonymous tipster because a known informant can be held responsible if his allegations turn out to be fabricated. Fla. v. J.L., 529 U.S. 266, 270 (2000).

It is not this Court's inquiry to resolve whether these elements individually would have provided a sufficient basis to issue the warrant *de novo*, but whether under the totality of circumstances there was substantial basis for the issuing judge to grant the request for the warrant. People v. Gallo, 2017 Guam 24 ¶ 25. Based on the totality of the circumstances, the Court finds the issuing judge was not "clearly erroneous" in finding that Santos was reliable enough to establish probable cause that Flores was in possession of stolen property.

2.      **There was a nexus to the Flores residence.**

Next, Defendants argue that "even assuming the first affidavit provided probable cause for the search of the Honda, the affidavit did not establish probable cause to search the residence for the firearms." Mot. Suppress 9 (Sept. 5, 2017). Santos told police that Defendant Flores placed the firearms in the Honda. Defendants argue that the police had no further information to suggest the firearms were taken out of the Honda and placed in the residence. Id.

It is a well-established principle that probable cause to believe that a suspect has committed a crime is not by itself adequate to secure a search warrant for the suspect's home. U.S. v. Ramos, 923 F.2d 1346, 1351 (9th Cir. 1991) (overruled on other grounds by U.S. v. Ruiz, 257 F.3d 1030 (9th Cir. 2001)). The Ninth Circuit has articulated the basis for search warrants of suspects' homes in particular instances where such a warrant is likely to produce evidence:

> "We recognize that probable cause to believe a person is guilty of a crime does not always constitute probable cause to search any property belonging to him. However, we have upheld many searches where 'the nexus between the items to be seized and the place to be searched rested not on direct observation . . . but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property.'" U.S. v. Pheaster, 544 F.2d 353, 373 (9th Cir. 1976) (internal citations omitted).

In the present case, the Court finds it unlikely that a suspect would receive stolen property and proceed to leave all such material (including nine firearms which he did not have a license to possess) inside his car. According to the information provided by Santos, the suspects would have had ample time following the burglaries to find a safer place to keep and conceal the stolen items. Based on the circumstantial factors provided by the Ninth Circuit in Pheaster, the Court finds a nexus existed to justify a search of the Flores residence for firearms.

**3.     The Second Search Warrant was overbroad in authorizing a search for anything other than the stolen firearms.**

The Defendants argue the affidavit in support of the Second Search Warrant refers only to the nine firearms Santos said he gave to Flores, and yet the Second Search Warrant included a TV, jewelry, ammunition, and cellular phones as items to be searched for. Mot. Suppress 10-11 (Sept. 5, 2017). Defendants further argue a search only for firearms would not authorize the scope of the search executed in this case, which went well beyond a search for firearms. Id.

The Fourth Amendment requires that a warrant "particularly describe the place to be searched and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth

Amendment is made applicable to Guam via § 1421b(c) of the Organic Act of Guam. See People v. Johnson, 1997 Guam 9 ¶ 4. "Particularity means that the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize." U.S. v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir. 2009). This prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." U.S. V. Mann, 389 F.3d 869, 877 (9th Cir. 2004). Still, "warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." Id. See also, e.g., U.S. v. Hillyard, 677 F.2d 1336, 1340 (9th Cir. 1982) (stating that the particularity guarantee does not preclude the use of generic language, and a warrant is proper that "specifie[s] the crime and the enterprise to which the items listed were to pertain").

The Affidavit of Search Warrant supporting the search of the Flores residence and Honda Element contains the following statement:

"On May 15, 2017, Hagatna Precinct Officers responded to a reported Burglary at #220 Lodo Lane, Chalan Pago, Guam. Officer C. Renguul interviewed the complainant, namely Robert Villagomez Agustin, who reported that his residence was burglarized and that nine (9) firearms were stolen along with jewelry and electronics." Affidavit of Search Warrant, Exhibit 3.

"TFO S.Q. To and TFO J.J. Techaire interviewed Santos who admitted to burglarizing and Stealing a total of eleven (11) firearms from Robert's residence. Santos stated the guns were stolen on the same day Serenity saw him carrying one of the rifles from the residence. Santos brought the stolen firearms to his residence and called his cousin, namely Roke Flores to help him sell the firearms. Flores took possession of nine (9) out of the eleven (11) firearms stolen from Robert's residence. The remaining two (2) firearms were found within Santos' bedroom. Santos believes that Flores is still in possession of the firearms because Flores has not informed him or given him any money for the sale of the firearms." Id.

Notably, the affidavit does not contain any statement indicating that stolen jewelry or electronics had been transferred to the possession of Defendant Flores. Santos informed police that he had given Flores the nine firearms taken in the burglary, but that he had pawned all of the jewelry he took. Mot. Suppress 3 (Sept. 5, 2017). Further, there is no statement that Santos gave ammunition to Flores. Defendants argue there is no connection between receiving stolen firearms and being in possession of ammunition. Def's Reply 4 (Sept. 29, 2017).

"In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." U.S. v. Stanert, 762

F.2d 775, 778 (9th Cir. 1985). Here, the affidavit in question did not contain a statement that any property other than the nine (9) firearms was transferred to Flores.

The People argue that there is a connection between stolen firearms and ammunition, as ammunition is typically stored within guns or adjacent to them. Opp'n 8 (Sept. 21, 2017). The Supreme Court of Guam has held that a warrant authorizing a search for firearms does not automatically authorize officers to search for ammunition. People v. Camacho, 2004 Guam 6. The Supreme Court held that since GPD failed to particularly describe ammunition as an object of the search in the search warrant, a search for ammunition would be impossible because the officers were left with no discretion to execute the warrant outside the confines of the limitations of the warrant. Id. ¶ 21. Applying this same reasoning, this Court finds that ammunition cannot be included in a search warrant without any reference to ammunition in the underlying affidavit. The Second Search Warrant was therefore overbroad in authorizing searches for anything other than the firearms. However, the search for jewelry/ammunition may still be valid if the Court determines that the officers acted in good-faith when relying upon the warrant.

### 4. Whether the good faith exception applies to the search for ammunition/jewelry.

The good-faith exception to the exclusionary rule states that evidence seized pursuant to an invalid warrant is nevertheless admissible if the law enforcement officer executing the warrant acted in good-faith reliance that the warrant was valid as issued by a judicial officer. U.S. v. Leon, 468 U.S. 897, 905 (1984). The Defendants argue the good-faith exception to the exclusionary rule does not apply to the present matter because the affidavits at issue were "bare bones" and issuing judge wholly abandoned her judicial role and acted as a "rubber stamp." Mot. Suppress 16-17 (Sept. 5, 2017).

As the Court explained in Leon, the good-faith exception does not apply if a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923. When applying that standard, a court must consider the objective reasonableness not only of "the officers who eventually executed the warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." Id. at 923.

There are four circumstances in which the good faith exception does not apply because reliance is *per se* unreasonable: (i) where an affiant misleads the issuing magistrate or judge by

making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith. Id. at 923–26.

Here, the officers were acting pursuant to search warrants which included ammunition and jewelry as items to be searched for. The criminal investigation had begun upon a report that several objects had been stolen from a victim's home, including jewelry and ammunition. While a close reading of the affidavit attached to the Second Warrant shows that Santos only stated that the firearms had been transferred to Defendant Flores, the officers could have reasonably believed that the totality of the circumstances provided probable cause to believe that Flores was also in possession of the other stolen properties, particularly the ammunition.

Additionally, while the Court's review of the Search Warrants has found a lack of probable cause to search for the ammunition and jewelry, there is no evidence that the issuing judge abandoned her role and acted as a "rubber stamp." There is no indication that the issuing Judge took on a law-enforcement role or mentality or that she received any sort of benefit that would influence her decision. See, e.g., Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979) (invalidating the warrant where the issuing justice "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation").

The issuing judge was presented with an affidavit laying out a factual scenario involving a burglary and stolen property which included jewelry and ammunition. The factual scenario further involved a transfer of certain stolen property from Santos to Defendant Flores. It was therefore reasonable for the issuing judge to find probable cause that Defendant Flores was in possession of any of the allegedly stolen property, despite Santos only admitting to giving Flores the firearms.

**5.      Seizure of the drugs was valid under the plain view doctrine.**

Defendants argue a search only for firearms would not authorize the scope of the search executed in this case, which went well beyond a search for firearms. Def's Mem. Supp. Mot. Suppress 11 (Sept. 5, 2017). "The drugs were found in a small closed container that the officers certainly knew did not contain a firearm listed in the warrant." Id. Having determined that the

officers were acting in good faith in searching for ammunition and/or jewelry pursuant to the Second and Third Search Warrants, the Court will now address whether the plain view doctrine applies to the seizure of the drugs.

A valid search for ammunition and/or jewelry would allow officers to search smaller compartments, such as the suede bag in which the drugs were found. Where police discover an item in plain view that they immediately recognize is incriminating, they may seize such item provided that the "intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement." Horton v. California, 496 U.S. 128, 134-35 (1990). The Horton decision created a three-part test to determine if the plain view doctrine applies. In order for a warrantless search or seizure to be valid under the plain view doctrine, (1) the officer must arrive at the place from which the evidence could be plainly viewed without violating the Fourth Amendment; (2) the evidence must be in plain view and its incriminating character must also be immediately apparent; and (3) the officer must also have a lawful right of access to the object itself. Horton, 496 U.S. at 136-37.

Having believed in good-faith that the warrant was valid to search the Flores residence for firearms, ammunition, and jewelry, the officers therefore arrived at the place and opened the suede bag without violating the Fourth Amendment. Once the bag was opened, the drugs were in plain view and the incriminating character was immediately apparent. Lastly, the search warrant gave the officer the lawful right of access to the object itself, as the officers lawfully entered the house and opened the bag. The seizure of the drugs was therefore valid under the plain view doctrine.

6. **The Third Search Warrant affidavit did not use illegally obtained evidence to establish probable cause**

Defendants next argue the affidavit supporting the Third Search Warrant included the results of the execution of the Second Search Warrant (including that drugs were found in the Flores residence), as well as the information that the Nissan was observed parked outside the residence when the Second Search Warrant was executed. Mot. Suppress 14 (Sept. 5, 2017). Defendants state this evidence was illegally obtained, and therefore cannot serve as probable cause for a subsequent warrant. Id. 15.

Evidence obtained as the direct result of an illegal search or seizure may not be used to establish probable cause for a subsequent search. U.S. v. Wanless, 882 F.2d 1459, 1465 (9th Cir. 1989).

The Court has found that the Second Search Warrant was partially valid, as probable cause existed to search the Flores residence and the Honda Element for firearms, and the officers acted in good faith in searching for ammunition and jewelry. The drugs were then discovered validly pursuant to the plain view doctrine. Because the drugs were legally discovered, this information was rightfully used in applying for the Third Search Warrant.

### 7. There was a nexus to the Nissan Altima.

Additionally, Defendants argue there was no nexus to establish probable cause for a search of the Nissan Altima. Def's Reply 4 (Sept. 29, 2017).

During the search of the residence pursuant to the Second Search Warrant, officers discovered suspected methamphetamine, scales and other drug paraphernalia in the residence. Also during the search, Officer Asanoma identified a second vehicle at the residence, a 2005 Black Nissan Altima, which investigators discovered was also registered to Defendant Flores. A warrant application was then prepared seeking authorization to search the Nissan Altima for drugs and firearms. The issuing judge authorized the search of the Altima for firearms, jewelry, electronics and drugs, paraphernalia, packaging materials, scales and drug ledgers.

Having discovered drugs within the residence, the issuing judge acted reasonably in finding that probable cause existed for a search of the Altima, which was registered to Defendant Flores and parked outside during the search of the residence. Given the car's ownership and proximity to the house at the time drugs were discovered inside, it was likely that the car had been used to transport drugs to and from the house. The Court finds the issuing judge had a substantial basis for concluding that probable cause existed for a search of the Altima.

### CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Defendants' Motion to Suppress is hereby **DENIED**.

CTS Feb. 20, 2019
at 9:00 a.m.

SO ORDERED _1/28/19_ .

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of: _____
Date: _____ Time: _____

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam